```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION

INTERNATIONAL UNION, UNITED      §
AUTOMOBILE, AEROSPACE &          §
AGRICULTURAL IMPLEMENT           §
WORKERS OF AMERICA and its       §
LOCAL 848,                       §
                                 §
                    Plaintiffs,  §
                                 § Civil Action No. 3:09-CV-0299-D
VS.                              §
                                 §
VOUGHT AIRCRAFT INDUSTRIES,      §
INC.,                            §
                                 §
                    Defendant.   §
```

MEMORANDUM OPINION
AND ORDER

In this action arising under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, plaintiffs International Union, United Automobile, Aerospace & Agricultural Implement Workers of America and its Local 848 (collectively, "the Union") seek judgment compelling defendant Vought Aircraft Industries, Inc. ("Vought") to arbitrate grievances arising under a collective bargaining agreement ("CBA") and involving laid-off supervisory employees who seek to invoke their right under the CBA to return to positions as bargaining unit employees.  Both sides move for summary judgment.  For the reasons that follow, the court grants the Union's motion, denies Vought's motion, and enters judgment compelling Vought to arbitrate the grievances.

I

This case is the subject of a prior opinion of the court. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Vought Aircraft Indus., Inc.*, 2009 WL 1650466 (N.D. Tex. June 11, 2009) (Fitzwater, C.J.) ("*Int'l Union I*"). Because the reasoning of *Int'l Union I* applies with equal force to many of the issues presented by the parties' cross-motions for summary judgment, the court will reiterate pertinent background facts and holdings from that opinion.

The Union is certified as the exclusive bargaining agent for defined classifications of Vought employees. The Union and Vought have entered into a series of collective bargaining agreements. The CBA at issue here specifies procedures for processing grievances that assert violations of the CBA. *Id.* at *1. Article V, § 8(a) provides, in pertinent part, that "grievances involving alleged violations with respect to the interpretation or application of the terms of this [CBA] may be appealed to an impartial arbitrator for settlement." *Id.* The CBA also excludes supervisors from union representation and the CBA. *Id.* (providing that employees covered by the CBA exclude "employees in . . . supervision as defined in Section 2 of the National Labor Relations Act, as amended.").

Eugene Neeper ("Neeper") and Chester Kirksey ("Kirksey") were at one time hourly bargaining unit employees covered by the CBA,

but they later became salaried supervisory employees. Both were salaried employees when they were laid off in 2006. *Int'l Union I*, 2009 WL 1650466, at *1. Based on the following contractual language contained in Article VII, § 9 of the CBA, Neeper and Kirksey sought to return to non-supervisory jobs within the bargaining unit:

> All employees transferring from the bargaining unit to salary prior to October 1, 2000 will continue to accrue seniority . . . . A salaried employee may return to the bargaining unit at the highest classification held within the job family that seniority entitled him in accordance with the layoff procedure[.]

*Int'l Union I*, 2009 WL 1650466, at *1. After Vought refused to return Neeper and Kirksey to the bargaining unit, the Union filed grievances. When Vought refused to arbitrate the grievances, the Union brought this lawsuit seeking to compel arbitration. *Id*.

Vought moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, contending that the question whether the Union could represent supervisory employees such as Neeper and Kirksey lay at the core of this dispute and therefore put the dispute within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). Vought also contended that the Union lacked standing to represent Neeper and Kirksey. *Int'l Union I*, 2009 WL 1650466, at *1. The court denied the motion. *Id*. at *5. The court concluded that § 301 of the LMRA vests federal courts with jurisdiction to hear suits for violation of contracts

between employers and labor organizations, but that resolution of the right to represent is generally a matter within the exclusive domain of the NLRB. The NLRB has exclusive authority to make the factual finding regarding the representative status of a labor organization. *Id.* *2. The court noted that disputes, however, are often difficult to classify. When a dispute can be fairly characterized as both a representational and a contractual issue, regardless how the dispute is categorized, there is no barrier to use of the arbitration procedure. *Id.* The court assumed *arguendo* that the Union's lawsuit had a representational character, and it held that so long as the suit could also be characterized as contractual, the court had jurisdiction. *Id.* at *3.

The court rejected Vought's contention that the Union's claim was actually a representational one falling within the exclusive jurisdiction of the NLRB. Vought maintained that, because Neeper and Kirksey were supervisors when they were laid off, were the court to enforce the CBA in the manner sought by the Union, the court would necessarily expand the Union's scope of representation to include supervisory employees, beyond that certified by the NLRB. *Id.* The court concluded that the dispute was primarily contractual, not representational. It reasoned that a representational controversy involved disputes regarding the duty of an employer to bargain collectively with the representative of the employees, as provided in 29 U.S.C. § 158(a)(5). But here,

there was no dispute between the Union and Vought over Vought's duty *to bargain* with the Union. The Union merely alleged that Neeper and Kirksey, as former hourly bargaining unit employees who were promoted to salaried positions and therefore transferred from the unit, had a contractual right to return to the bargaining unit. The court disagreed with Vought's characterization that the following were "representational" issues: "'(i) whether supervisors like Neeper and Kirksey are in a classification that can appropriately be included within a collective bargaining unit, and (ii) whether they were in the bargaining unit certified by the NLRB when their employment was terminated.'" *Id.* (quoting D. Reply Br. 3). The court held that they were contractual issues. The first issue was "really another way of asking whether Neeper and Kirksey ha[d] a contractual right under the CBA to return to positions within the bargaining unit." *Id.* The second issue was also contractual because the question whether Neeper and Kirksey were in the bargaining unit "turn[ed] on whether they ha[d] a contractual right under the CBA to return to their former bargaining unit positions." *Id.*[1]

---

[1]At the conclusion of this sentence, the court cited *Woosley v. Avco Corp.*, 944 F.2d 313, 317 (6th Cir. 1991). As the court stated in its July 24, 2009 order denying Vought's motion to certify order for interlocutory appeal and motion to stay:

> In the briefing, both sides appear to make much of this court's citation of [*Woosley*]. The court could remove from § IV(B) of its memorandum opinion and order the citation to

The court also rejected Vought's contention that the court lacked jurisdiction under 29 U.S.C. § 185(a) because Neeper and Kirksey were excluded from the statutory definition of "employee" unless and until they were returned to the bargaining unit and non-supervisory status.  *Id.* at *4.  It reasoned that Neeper's and Kirksey's rights to return to the bargaining unit arose, if at all,

> because, during the time they were hourly employees covered by the CBA (and represented by the Union), they obtained the contractual rights—*as hourly employees*—to return to the bargaining unit after they transferred to salary.  These are not rights that they first obtained *as salaried supervisors*.  They are rights that they obtained as bargaining unit employees *before* they transferred out.

*Id.* (emphasis in original).  "[T]he Union [was] not seeking to represent supervisors *qua* supervisors; it [was] seeking to represent persons who claim[ed] a contractual right under the CBA to return to hourly positions as bargaining unit members."  *Id.*

The court also held that the Union had standing because it purported to represent two bargaining unit members who transferred to salaried positions but who were asserting rights that accrued to them when they were bargaining unit members and who, having been

---

> *Woosley* without changing the essential reasoning.  As indicated by the "see" signal and the placement of the *Woosley* citation in § IV(B), the court viewed *Woosley* as providing additional support for the reasoning that preceded it.

July 24, 2009 Order at 2 n.2.

laid off from their supervisory positions, were seeking to return to positions that the Union represents.  *Id.*

Vought and the Union now move for summary judgment.

II

In support of its summary judgment motion, Vought relies on the same arguments it asserted in support of its motion to dismiss.  It presents no new facts, arguments, or legal authority.  Vought does attempt to distinguish one case that the court cited in *Int'l Union I*: *Woosley v. Avco Corp.*, 944 F.2d 313 (6th Cir. 1991).  *Woosley* held that because the operative collective bargaining agreement stated that an hourly employee-turned-supervisor "'*shall be entitled to return* to his last held occupation in the bargaining unit,'" he should be treated as a member of the bargaining unit.  *Id*. at 317 (emphasis in original).  Vought posits that while the *Woosley* collective bargaining agreement used the phrase "entitled to," the CBA at issue in this case provides that "[a] salaried employee *may* return to the bargaining unit . . . in accordance with the layoff procedure."  *Int'l Union I*, 2009 WL 1650466, at *1 (emphasis added).  Vought therefore argues that the plaintiffs in *Woosley* had a right to return, whereas Neeper and Kirksey only "may" return.

As the court has explained,[2] it could have omitted its citation to *Woosley* without altering the essential reasoning of

---

[2]*See supra* note 1.

- 7 -

*Int'l Union I*. For the reasons set out in *Int'l Union I*, the court holds that it has subject matter jurisdiction, that the Union has standing, and that Vought's motion for summary judgment should be denied.

                                III

The court now considers the Union's motion for summary judgment.

> The courts' role is very limited when deciding issues of arbitrability. The court's function is to decide whether the claim asserted is the type of claim the parties have agreed to arbitrate. In no way are the courts to consider the merits of a claim. Rather, the court is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.
>
> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. That presumption is successfully rebutted only if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the most forceful evidence of a purpose to exclude the claim from arbitration.

*Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.*, 449 F.3d 616, 619-20 (5th Cir. 2006) (citations and quotation marks omitted).

The court cannot say with positive assurance that the arbitration agreement in question is not susceptible of an

interpretation that covers the asserted dispute.  And Vought has not rebutted the presumption in favor of coverage by showing either the existence of an express provision excluding the grievances from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration.

Article V, § 7 of the CBA states that if the parties have pursued the grievance procedure through mediation, but are still unable to resolve the conflict, the claim "will be submitted to arbitration as provided under this article." D. App. 14.  The CBA then limits the availability of arbitration to "grievances involving alleged violations with respect to the interpretation or application of the terms of this Agreement[.]" *Int'l Union I*, 2009 WL 1650466, at *1.  The Union asserts, and Vought does not dispute, that it has exhausted the pre-arbitration review process.  The Union's grievances contend that Neeper and Kirksey were denied their contractual right to be reinstated to their positions within the bargaining unit.  This is an "alleged violation with respect to the . . . application of" the CBA provision granting to hourly bargaining unit employees the right to return to bargaining unit positions if they transferred from the bargaining unit to salary prior to October 1, 2000.  The court therefore holds that the grievances at issue are subject to arbitration, and that the Union is entitled to summary judgment compelling Vought to arbitrate the grievances.

* * *

The Union's September 30, 2009 motion for summary judgment is granted, Vought's October 1, 2009 motion for summary judgment is denied, and judgment is entered in favor of the Union.

**SO ORDERED.**

December 10, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 10 -